No. 31,178.

In re Application of WILLIAM SKINNER for Writ of Habeas Corpus. (WILLIAM SKINNER, *Petitioner*, v. KIRK PRATHER, Warden Kansas State Penitentiary, *Respondent*.)

(18 P. 2d 154.)

Opinion filed January 28, 1933.

*John C. Foulks* and *Chas. H. Stewart, Jr.*, both of Topeka, for the petitioner.

*Roland Boynton*, attorney-general, and *Walter T. Griffin*, assistant attorney-general, for the respondent.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original proceeding wherein the petitioner seeks a writ of habeas corpus against the warden of the state penitentiary to discharge him from confinement therein because chapter 191 of the Session Laws of 1927 (R. S. 1931 Supp. 21-107a), known as the habitual-criminal act, is unconstitutional in that the additional penalties authorized thereby to be imposed for second and third offenses are assessed by district judges of this state with discrimination upon those of the same class, thus denying the petitioner and others the equal protection of the law as required by the fourteenth amendment to the constitution of the United States.

It is alleged that the petitioner, William Skinner, was convicted

in the district court of Linn county, Kansas, of grand larceny of money, and was sentenced to life imprisonment under the habitual-criminal act and that, aside from the application of that act, his maximum sentence would have expired on November 5, 1932. He further alleges that—

"It is the general practice of the judges of the district courts of the state of Kansas to use their own judgment as to whether or not a person convicted of crime shall be sentenced under chapter 191 of the Session Laws of 1927 or under the older statute, in cases where the judge knows from the admissions of the convicted persons or other competent evidence that such persons have been previously convicted of felonies and served terms in penal institutions, and as a result of these discriminatory acts a large per cent of the habitual criminals are serving short sentences in the penal institutions of the state of Kansas, while a much smaller per cent are serving the added penalties fixed by chapter 191 of the Session Laws of 1927."

It will be observed that the form and substance of the act in question is not attacked by the petitioner, but only the discriminatory application of it to offenders of the same class, and this discriminatory enforcement of the act by district judges is what has deprived him of the equal protection of the law. Petitioner calls attention to the all-inclusive nature of the act wherein it states that—

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his life." (R. S. 1931 Supp. 21-107a.)

Petitioner also calls attention to the imperative duty of the courts to assess the additional penalties because of the use of the word "shall," thus every person so convicted shall be confined, etc. The interpretation and meaning of these two words and the construction of the sentence above quoted as given by counsel for the petitioner must be conceded, but there is a distinct modification of this all-inclusive and imperative provision in the next sentence of the section, which is as follows:

"Judgment in such cases shall not be given for the increased penalty, unless the court shall find from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state."

It is apparent that the first very positive rule is by the subsequent sentence distinctly rendered inapplicable to any and all cases unless the court shall find the fact of a former conviction. There is no

complaint that such fact was not found in this case, but that in other cases of the same class where that fact existed, the courts failed and neglected to make such findings, and assessed the punishments without the added penalty. The allegations of the petition are that the judges of the courts omit and fail to make such findings when they know of such previous convictions from the admissions of the defendants or other competent evidence. As proof of such allegations the petitioner has introduced numerous affidavits of other prisoners showing knowledge on the part of the trial judges and county attorneys of former convictions of defendants and the omission of the courts to make such findings, also an affidavit of an officer of the state giving extracts taken from numerous statements required by R. S. 62-1523 to be furnished by the trial judge and the county attorney in each case, showing certain prisoners to have been habitual criminals where no such findings had been made. These statements are not intended to be based upon knowledge subsequently acquired but are to be made out and signed at the same time the warrant of commitment is executed. The statute last above cited calls the contents of such statements "information," which can readily be distinguished from a finding of fact upon which an additional penalty might be assessed. Even the admissions of some defendants might not convince the trial courts as to the facts nor be sufficient to justify findings in accordance therewith. Undoubtedly in some, and perhaps several, of the many cases from which extracts were made the admissions or other evidence would and could properly have supported a finding of former conviction, but no such finding was made, and because it was not made in those cases and was made in the petitioner's case, discrimination is alleged between those of the same class in the application of the law, which it is urged deprived the petitioner of equal protection thereunder.

Petitioner cites *Hayes v. Missouri,* 120 U. S. 68, where it was said:

"The fourteenth amendment to the constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." (p. 71.)

The matter there involved was the legislative discretion in giving the state of Missouri, in the trial of criminal cases, the right to fifteen peremptory challenges in cities of over 100,000 inhabitants,

instead of eight challenges allowed in other parts of the state, and that law was held not to be repugnant to the fourteenth amendment to the United States constitution.

Other cases, including *Ex Parte Virginia*, 100 U. S. 339; *Nashville, C. & St. L. Ry. v. Taylor*, 86 Fed. 168; *Home Tel. & Tel. Co. v. Los Angeles*, 227 U. S. 278; *Geiger-Jones Co. v. Turner*, 230 Fed. 233; and *Iowa-Des Moines Bank v. Bennett*, 284 U. S. 239, are cited by counsel for petitioner to show that the acts of judicial officers and prosecuting attorneys are acts of the state, for the state can only act through its officers, and if their acts deprive one of the equal protection of the law, the provision under which they act is unconstitutional. This argument is logical and must be conceded, but the cases cited go further and concern the civil rights of colored citizens, the unequal assessment for taxation, depriving some of the right of equalization, the wrongful extensions of assessments properly made and the enforcement of a blue-sky law differently as to domestic and foreign corporations, all these disapproved discriminations containing elements of intention, design, purpose and sometimes concerted action. Nothing along any of these lines is alleged in the instant case.

The recent case of *Boynton v. Fox West Coast Theaters Corporation*, 60 F. 2d 851, shows the necessity of alleged discriminations being arbitrary and willful on the part of the prosecuting officer in order to be a denial of equal protection.

"The fact that county attorneys in other counties in Kansas were not attempting to enforce section 21-952, *supra*, against the operators of motion-picture shows in their counties would certainly constitute no defense to a prosecution for such a violation in Sedgwick county by the county attorney of that county, especially in the absence of a showing that the several county attorneys were acting in concert and arbitrarily and willfully discriminating against motion-picture theater operators in Sedgwick county. The proof adduced by plaintiffs showed no willful refusal on the part of the county attorney of Sedgwick county to prosecute other violators of section 21-952, *supra*." (p. 854.)

In the case of *State, ex rel., v. Iola Theater Corp.*, 136 Kan. 411, 15 P. 2d 459, the county attorney admitted there were other moving-picture theaters in the county, and within the jurisdiction of the trial court, that were violating the Sunday labor law, and on review it was held that such situation was insufficient ground for refusing to restrain the enforcement of the law in that case, although injunction was properly refused for another reason.

The constitutionality of the act here under consideration was attacked in the case of *State v. Woodman*, 127 Kan. 166, 272 Pac. 132, on the ground of prescribing a different punishment for different persons committing the same offense, and the law was upheld.

In the case of *Yick Wo v. Hopkins*, 118 U. S. 356, the petitioners and two hundred other Chinese were deprived of the right to maintain laundries in San Francisco under ordinances requiring them first to obtain written permission from the board of supervisors unless the laundries were maintained in buildings constructed of brick or stone, and punishment was prescribed for the violation of the ordinances. In the action for a writ of habeas corpus it was shown that not less than eighty Americans maintained laundries under exactly the same circumstances as the Chinese and were not arrested nor disturbed. The discrimination was admitted on the trial and the writs were granted on the ground that the discrimination was illegal, being based upon a hostility to the race of the petitioners and with an evil eye and an unequal hand.

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution." (p. 373.)

In the case at bar there are no such allegations, none asserting design, concerted action or deliberate arbitrary or willful intention to discriminate, only the naked allegation and proof of actual discriminations occurring frequently which we think are not sufficient to render the statute as administered unconstitutional, nor to deprive the petitioner of the equal protection of the law.

Our attention is also directed to the discriminations noted in the Woodman case, *supra*, where under the old law the court assessed the penalty anywhere between the maximum and the minimum prescribed. In the case of *Brandon v. Mackey*, 122 Kan. 207, 251 Pac. 176, the cumulative sentence was approved as being in the discretion of the trial judge. Two earlier decisions, *In re Weisman*, 93 Kan. 161, 143 Pac. 487, and *In re Stahlnaker*, 93 Kan. 622, 144 Pac. 882, recognized the discretion of the court in fixing the penalties for two or more offenses where the punishment was imposed at the same time, to run either concurrently or consecutively. (See, also, *State v. Woodbury*, 133 Kan. 1, 298 Pac. 794, and 16 C. J. 1353.)

The writ is denied.

THIELE, J., not participating.